UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                              :

In re:                         :        Chapter 11
                              :

BEAVER CREEK REALTY CORP.    :        Case no. 10-23784 (RDD)
133 WEST 145th REALTY CORP.    :        Case no. 10-23786 (RDD)
304 WEST 147th REALTY CORP.    :        Case no. 10-23787 (RDD)
SOL VISTA REALTY CORP.        :        Case no. 10-23788 (RDD)
                              :
                              :        Tax ID No. 20-0498347

        Debtors.            :
                              :        <u>JOINTLY ADMINISTERED</u>
-------------------------------------------------------------x

**NOTICE OF MOTION OF ASTORIA FEDERAL SAVINGS AND LOAN
ASSOCIATION FOR AN ORDER, AS TO ALL DEBTORS, (1) DISMISSING THE
CASES; OR (2) GRANTING STAY RELIEF TO STATE COURT
FORECLOSURES AND RECEIVERSHIPS**

TAKE NOTICE that on December 15, 2010, Astoria Federal Savings & Loan
Association ("Astoria") filed a motion seeking (1) dismissal of the above-captioned bankruptcy
cases pursuant to 11 U.S.C. §§ 1112(b) and/or 305(a); or (2) relief from the automatic stay to
proceed with pending state court foreclosures and receiverships pursuant to 11 U.S.C. § 362(d).

TAKE FURTHER NOTICE that a hearing (the "**Hearing**") will be held in connection
with the entry of an order in connection with this motion and any further relief on January 26,
2011, at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Robert
D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the
Southern District of New York (the "**Court**"), 300 Quarropas Street, White Plains, New York
10601-4140.

TAKE FURTHER NOTICE that responses or objections, if any, to this motion shall be in
writing, shall state with particularity the reasons for the objection or response, and shall be filed
with the Court, with a courtesy copy delivered to chambers and served upon: counsel for movant,
Thompson Hine, LLP, 335 Madison Ave., 12th Floor, New York, NY 10017 (Attn: Barry Kazan,
Esq.); and counsel for Debtors, Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd

Floor, New York, NY 10036 (Attn: Kevin Nash), so as to be filed and received by 5:00 p.m. (EST) no later than three (3) days prior to the above-stated date of the Hearing.

Dated: December 15, 2010          **THOMPSON HINE, LLP**

/s/ Barry M. Kazan
                Barry M. Kazan
335 Madison Ave.
New York, NY 10017
(212) 908-3921
barry.kazan@thompsonhine.com

*Attorneys for Creditor,*
*Astoria Federal Savings & Loan Assoc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
In re:                                              :        Chapter 11
:
BEAVER CREEK REALTY CORP.                           :        Case no. 10-23784 (RDD)
133 WEST 145th REALTY CORP.                         :        Case no. 10-23786 (RDD)
304 WEST 147th REALTY CORP.                         :        Case no. 10-23787 (RDD)
SOL VISTA REALTY CORP.                              :        Case no. 10-23788 (RDD)
:
:        Tax ID No. 20-0498347
          Debtors.                                  :
:        <u>JOINTLY ADMINISTERED</u>
---------------------------------------------------------------x

## MOTION OF ASTORIA FEDERAL SAVINGS AND LOAN ASSOCIATION FOR AN ORDER, AS TO ALL DEBTORS, (1) DISMISSING THE CASES; OR (2) GRANTING STAY RELIEF TO STATE COURT FORECLOSURES AND RECEIVERSHIPS

NOW COMES secured creditor, Astoria Federal Savings & Loan Association ("**Astoria**"), by and through its counsel, seeking entry of an order (1) dismissing the above-captioned case; or (2) granting Astoria stay relief so that it may continue its foreclosure efforts against Debtors, Beaver Creek Realty Corporation ("**Beaver Creek**"), 133 West 145th Realty Corporation ("**133 West**"), 304 West 147th Street Realty Corporation ("**304 West**") and Sol Vista Realty Corporation ("**Sol Vista**"; each a "**Debtor**" and collectively, "**Debtors**") in state court (the "**Motion**"). In support of the Motion, Astoria states as follows:

## <u>INTRODUCTION</u>

Debtors are each special purpose entities organized for the sole purpose of owning a single real estate property which is, in turn, rented to residential tenants. Each Debtor owns one property and each case is considered a single asset real estate case under the Bankruptcy Code. Astoria holds a first-priority mortgage position on each of the properties as security for four separate note obligations. Non-debtor Alan Suridis is the sole owner or principal of each Debtor and guarantor of all four note obligations.

Prior to the Petition Date, each of the Debtors was in default for failure to timely make monthly payments as required under the notes. In response to their respective defaults, Astoria filed two lawsuits seeking foreclosure on all four properties and money judgments. In both cases, the state court granted Astoria's motions for the appointment of a receiver for the management of the properties and collection of rents. With respect to the Sol Vista property, a receiver took possession and began collecting rents. The intervening filing of the Bankruptcy Petitions in these cases prevented the receiver for the other three properties from taking possession and beginning to collect rents.

Debtors do not belong in Chapter 11. Each Debtor's sole asset is wholly encumbered by mortgages in favor of Astoria. The foreclosure cases are the appropriate venue for what amounts to a two-party dispute. Accordingly, these cases should be dismissed as a bad faith filing pursuant to § 1112(b). In the alternative, the Court should grant relief from the automatic stay to permit Astoria to continue the state court foreclosure actions.

## JURISDICTION

1.      On August 27, 2010 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York, designated as follows: (a) Beaver Creek under case number 10-23784; (b) 133 West under case number 10-23786; (c) 304 West under case number 10-23787; and (d) Sol Vista under case number 10-23788.

2.      On November 17, 2010, the Court entered an order providing for the joint administration of the Debtors' bankruptcy cases (Dkt. No. 10).[1]

3.      Since the Petition Date, Debtors have been operating their businesses and managing the property of their estates as a debtors-in-possession.

---

[1] Unless otherwise specified, document references shall be to the Beaver Creek case, 10-23784.

4.     Debtors have designated each case as a "single asset real estate" case pursuant to § 101(51B).

5.     The statutory predicates for the relief requested by this Motion are 11 U.S.C. §§ 105(a), 305(a), 362(d), and 1112(b).  This Motion is brought pursuant to Fed. R. Bankr. P. 4001 and 9014.

6.     The Court has jurisdiction to hear and decide the Motion pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G) & (M) and 1334.  This is a core proceeding.

7.     Venue in this Court is appropriate pursuant to 28 U.S.C. § 1408.

## FACTUAL BACKGROUND

### BEAVER CREEK

8.     Prior to the Petition Date, on June 23, 2010, Astoria filed a complaint for foreclosure against 133 West, 304 West and Beaver Creek, styled *Astoria Federal Savings & Loan Assoc. v. 133 West 145th Street Realty Corp., et al.*, case no. 10-108287 (the "**NY County Foreclosure Action**"), in the Supreme Court of the State of New York, New York County (the "**NY County Court**").  Concurrently with the filing of the NY County Foreclosure Action, Astoria filed a motion seeking the appointment of a receiver, which the NY County Court granted in an order dated  July 30, 2010 (the "**NY County Receiver Order**").  A copy of the NY County Receiver Order is attached hereto as Exhibit A and is made an integral part hereof.

9.     Astoria obtained the NY County Receiver Order mere days before the Petition Date.   Developments in the NY County Foreclosure Action prompted Debtors to file for bankruptcy, according to the affidavit of Debtors' sole owner and president, Alan Suridis, filed with Beaver Creek's petition (Dkt. No. 1) pursuant to LBR 1007-2 (the "**Suridis Affidavit**") at ¶ 12.  Debtors' petitions were filed shortly before Astoria was able to file a motion for summary judgment in the NY County Foreclosure Action.

10.     Astoria filed the NY County Foreclosure Action, as it pertains to Beaver Creek, upon Beaver Creek's default under a certain promissory note in the initial principal amount of $1,700,000.00, which Beaver Creek duly executed, acknowledged and delivered to Astoria on or about May 8, 2008, with such note modified under a certain Mortgage Note Modification Agreement duly executed, acknowledged and delivered to Astoria on or about September 1, 2009 (collectively, this promissory note and its modification shall herein be referred to as the "**BC Note**" and are attached hereto as <u>Exhibit B</u> and <u>Exhibit C</u>, respectively).

11.     As collateral for the payment of the BC Note, on or about May 8, 2008, Beaver Creek duly executed, acknowledged and delivered to Astoria a fee mortgage, a copy of which is attached hereto as <u>Exhibit D</u> and made an integral part hereof.  Such mortgage encumbers the real and related personal property situated in the City of New York, New York County, being Section 7, Block 1988, Lot 121 on the Tax Map of New York County, bearing the address of 518 West 136th Street, New York, New York, described in metes and bounds in Schedule A to such mortgage (the "**BC Property**").  Such mortgage was modified on or about September 1, 2009 by a document entitled "Modification of Consolidated Mortgage" (collectively, Astoria's mortgage upon the BC Property and its modification shall be referenced as the "**BC Mortgage**"), a copy of which is attached hereto as <u>Exhibit E</u> and is made an integral part hereof.

12.     Astoria perfected its interest in the BC Property by duly recording its mortgage on June 5, 2008 in the Office of the City Register in CRFN 2008000226368.  Astoria recorded the mortgage modification on September 18, 2009 in the Office of the City Register in CRFN 2009000302748.

13.     The debt reflected in and evidenced by the BC Note, as secured by the BC Mortgage, constitutes a single first lien upon the BC Property, securing the principal indebtedness, together with interest, late charges and prepayment premium, as such may accrue.

14. Prior to the Petition Date, Beaver Creek defaulted under the BC Note by virtue of, among other things, Beaver Creek's failure to make various payments as required by the BC Note, including the regular monthly installment payments due from and after May 2010 (the "**BC Default**"). The BC Default continues as of the filing of this Motion.

15. As a result of the BC Default, Astoria accelerated the amounts due under the BC Note, which sum includes all unpaid principal, interest, late charges and the prepayment premium, which sum equals, as of June 2, 2010, $1,765,476.87, as detailed below:

| | |
|---|---|
| *Principal* | $1,692,500.00 |
| *Interest* | $15,303.02 |
| *Late Charges* | $6,898.85 |
| *Prepayment premium* | $50,775.00 |
| *Total* | $1,765,476.87 |

16. As additional security for the BC Note, as part of the BC Mortgage, Beaver Creek assigned to Astoria an interest in the rents owed by various tenants who lease (and are currently leasing) the BC Property ("**BC Rents**"). In addition, by separate agreement dated May 8, 2008, formally entitled Assignment of Rents and Interests in All Leases as Collateral Security (the "**BC Assignment of Rents**"), a copy of which is attached hereto as <u>Exhibit F</u> and made an integral part hereof, Beaver Creek assigned to Astoria all of its right, title and interest in all rents and other monies derived from the BC Property and irrevocably appointed Astoria its agent with all powers pertaining to the leases of the BC Property. The BC Assignment of Rents was recorded on June 5, 2008 in the Office of the City Register, in CFRN 2008000226369.

17. On information and belief, Beaver Creek continues to collect and use BC Rents for its operations. Such use of BC Rents is without the consent of Astoria.

**133 WEST**

18. Astoria filed the NY County Foreclosure Action, as it pertains to 133 West, upon 133 West's default under a certain promissory note in the initial principal amount of

$2,900,000.00, which 133 West duly executed, acknowledged and delivered to Astoria on or about October 5, 2007, with such note modified under a Mortgage Note Modification Agreement on or about September 1, 2009 (collectively, this promissory note and its modification shall herein be referred to as the "**133 West Note**" and are attached hereto as <u>Exhibit G</u> and <u>Exhibit H</u>, respectively).

19.     As collateral for the payment of the 133 West Note, on or about October 5, 2007, 133 West duly executed, acknowledged and delivered to Astoria a fee mortgage, a copy of which is attached hereto as <u>Exhibit I</u> and made an integral part hereof.  Such mortgage encumbers the real and related personal property situated in the City of New York, New York County, being Section 7, Block 2014, Lot 20 on the Tax Map of New York County, bearing the address of 133 West 145th Street, New York, New York, described in metes and bounds in Schedule A to such mortgage (the "**133 West Property**").  Such mortgage was modified on or about September 1, 2009 by a document entitled "Modification of Consolidated Mortgage" (collectively, Astoria's mortgage upon the 133 West Property and its modification shall be referenced as the "**133 West Mortgage**"), a copy of which is attached hereto as <u>Exhibit J</u> and is made an integral part hereof.

20.     Astoria perfected its interest in the 133 West Property by duly recording its mortgage on November 9, 2007 in the Office of the City Register in CRFN 2007000563723. Astoria recorded the Modification of Consolidated Mortgage on September 18, 2009 in the Office of the City Register in CRFN 2009000302747.

21.     The debt reflected in and evidenced by the 133 West Note, as secured by the 133 West Mortgage, constitutes a single first lien upon the 133 West Property, securing the principal indebtedness, together with interest, late charges and prepayment premium, as such may accrue.

22.     Prior to the Petition Date, 133 West defaulted under the 133 West Note by virtue of, among other things, 133 West's failure to make various payments as required by the 133

West Note, including the regular monthly installment payments due from and after April 2010 (the "**133 West Default**"). The 133 West Default continues as of the filing of this Motion.

23. As a result of the 133 West Default, Astoria accelerated the amounts due under the 133 West Note, which sum includes all unpaid principal, interest, late charges and the prepayment premium, which sum equals, as of June 2, 2010, $2,992,757.54, as detailed below:

| | |
|---|---|
| *Principal* | $2,873,332.46 |
| *Interest* | $44,975.63 |
| *Late Charges* | $16,982.80 |
| *Prepayment premium* | $57,466.65 |
| *Total* | $2,992,757.54 |

24. As additional security for the 133 West Note, as part of the 133 West Mortgage, 133 West assigned to Astoria an interest in the rents owed by various tenants who lease (and are currently leasing) the 133 West Property ("**133 West Rents**"). In addition, by separate agreement dated October 5, 2007, formally entitled Assignment of Rents and Interests in All Leases as Collateral Security (the "**133 West Assignment of Rents**"), a copy of which is attached hereto as <u>Exhibit K</u> and made an integral part hereof, 133 West assigned to Astoria all of its right, title and interest in all rents and other monies derived from the 133 West Property and irrevocably appointed Astoria its agent with all powers pertaining to the leases of the 133 West Property. The 133 West Assignment of Rents was recorded on November 9, 2007 in the Office of the City Register, in CFRN 2007000563724.

25. On information and belief, 133 West continues to collect and use 133 West Rents for its operations. Such use of 133 West Rents is without the consent of Astoria.

### 304 WEST

26. Astoria filed the NY County Foreclosure Action, as it pertains to 304 West, upon 304 West's default under a certain promissory note in the initial principal amount of $2,800,000.00, which 304 West duly executed, acknowledged and delivered to Astoria on or

about October 24, 2007, with such note modified under a Mortgage Note Modification Agreement on or about September 1, 2009 (collectively, this promissory note and its modification shall herein be referred to as the "**304 West Note**" and are attached hereto as Exhibit L and Exhibit M, respectively).

27. As collateral for the payment of the 304 West Note, on or about October 24, 2007, 304 West duly executed, acknowledged and delivered to Astoria a fee mortgage, a copy of which is attached hereto as Exhibit N and made an integral part hereof. Such mortgage encumbers the real and related personal property situated in the City of New York, New York County, being Section 7, Block 2045, Lot 37 on the Tax Map of New York County, bearing the address of 304 West 147th Street, New York, New York, described in metes and bounds in Schedule A to such mortgage (the "**304 West Property**"). Such mortgage was modified on or about September 1, 2009 by a document entitled "Modification of Consolidated Mortgage" (collectively, Astoria's mortgage upon the 304 West Property and its modification shall be referenced as the "**304 West Mortgage**"), a copy of which is attached hereto as Exhibit O and is made an integral part hereof.

28. Astoria perfected its interest in the 304 West Property by duly recording its mortgage on November 9, 2007 in the Office of the City Register in CRFN 2007000563241. Astoria recorded the Modification of Consolidated Mortgage on September 18, 2009 in the Office of the City Register in CRFN 2009000302746.

29. The debt reflected in and evidenced by the 304 West Note, as secured by the 133 West Mortgage, constitutes a single first lien upon the 304 West Property, securing the principal indebtedness, together with interest, late charges and prepayment premium, as such may accrue.

30. Prior to the Petition Date, 304 West defaulted under the 304 West Note by virtue of, among other things, 304 West's failure to make various payments as required by the 304 West Note, including the regular monthly installment payments due from and after April 2010 (the "**304 West Default**"). The 304 West Default continues as of the filing of this Motion.

31.     As a result of the 304 West Default, Astoria accelerated the amounts due under the 304 West Note, which sum includes all unpaid principal, interest, late charges and the prepayment premium, which sum equals, as of June 2, 2010, $2,919,110.14, as detailed below:

| | |
|---|---|
| *Principal* | $2,786,717.01 |
| *Interest* | $57,843.73 |
| *Late Charges* | $18,628.06 |
| *Other fees* | $187.00 |
| *Prepayment premium* | $55,734.34 |
| *Total* | $2,919,110.14 |

32.     As additional security for the 304 West Note, as part of the 304 West Mortgage, 304 West assigned to Astoria an interest in the rents owed by various tenants who lease (and are currently leasing) the 304 West Property ("**304 West Rents**").   In addition, by separate agreement dated October 24, 2007, formally entitled Assignment of Rents and Interests in All Leases as Collateral Security (the "**304 West Assignment of Rents**"), a copy of which is attached hereto as Exhibit P and made an integral part hereof, 304 West assigned to Astoria all of its right, title and interest in all rents and other monies derived from the 133 West Property and irrevocably appointed Astoria its agent with all powers pertaining to the leases of the 304 West Property.  The 304 West Assignment of Rents was recorded on November 9, 2007 in the Office of the City Register, in CFRN 2007000563242.

33.     On information and belief, 304 West continues to collect and use 304 West Rents for its operations. Such use of 304 West Rents is without the consent of Astoria.

**SOL VISTA**

34.     Prior to the Petition Date, on June 23, 2010, Astoria filed a complaint for foreclosure against Sol Vista, styled *Astoria Federal Savings & Loan Assoc. v. Sol Vista Realty Corp., et al.*, case no. 15819-2010 (the "**Westchester County Foreclosure Action**"; collectively, with the NY County Foreclosure Action, the "**Foreclosure Actions**"), in the Supreme Court of the State of New York, Westchester County (the "**Westchester County**

**Court**").  Concurrently with the filing of the Westchester County Foreclosure Action, Astoria filed a motion seeking the appointment of a receiver, which the Westchester County Court granted in an order dated  July 7, 2010 (the "**Westchester County Receiver Order**").  A copy of the Westchester County Receiver Order is attached hereto as <u>Exhibit Q</u> and made an integral part hereof.

35.     Astoria obtained the Westchester County Receiver Order prior to the Petition Date.  The receiver appointed thereto obtained possession of, and managed, the SV Property (defined hereafter) for approximately one week before the Petition Date.  Developments in the Westchester County Foreclosure Action prompted Debtors to file for bankruptcy.   Suridis Affidavit**, ¶** 12.  Debtors' petitions were filed shortly before Astoria was able to file a motion for summary judgment in the Westchester County Foreclosure Action.

36.     Astoria filed the Westchester County Foreclosure Action upon Sol Vista's default under a certain promissory note in the initial principal amount of $1,200,000.00, which Sol Vista duly executed, acknowledged and delivered to Astoria on or about September 18, 2007, with such note modified under a certain Mortgage Note Modification Agreement duly executed, acknowledged and delivered to Astoria on or about September 1, 2009 (collectively, this promissory note and its modification shall herein be referred to as the "**SV Note**" and are attached hereto as <u>Exhibit R</u> and <u>Exhibit S</u>, respectively; collectively, with the BC Note, the 133 West Note and the 304 West Note, the "**Notes**").

37.     As collateral for the payment of the SV Note, on or about September 18, 2007, Sol Vista duly executed, acknowledged and delivered to Astoria a fee mortgage, a copy of which is attached hereto as <u>Exhibit T</u> and made an integral part hereof.  Such mortgage encumbers the real and related personal property situated in the City of Yonkers, Westchester County, being Section 1, Block 130, Lot 41 on the Tax Map of Westchester County, bearing the address of 402-404 Riverdale Avenue, Yonkers, New York, described in metes and bounds in Schedule A to

such mortgage (the "**SV Property**"; collectively, with the BC Property, the 133 West Property and 304 West Property, the "**Properties**").  Such mortgage was modified on or about September 1, 2009 by a document entitled "Modification of Consolidated Mortgage" (collectively, Astoria's mortgage upon the SV Property and its modification shall be referenced as the "**SV Mortgage**"; together with the BC Mortgage, the 133 West Mortgage and 304 West Mortgage, the "**Mortgages**"), a copy of which is attached hereto as <u>Exhibit U</u> and is made an integral part hereof.

38.     Astoria perfected its interest in the SV Property by duly recording its mortgage on October 23, 2007 in Control Number 472900450.

39.     The debt reflected in and evidenced by the SV Note, as secured by the SV Mortgage, constitutes a single first lien upon the SV Property, securing the principal indebtedness, together with interest, late charges and prepayment premium, as such may accrue.

40.     Prior to the Petition Date, Sol Vista defaulted under the SV Note by virtue of, among other things, Sol Vista's failure to make various payments as required by the SV Note, including the regular monthly installment payments due from and after May 2010 (the "**SV Default**").  The SV Default continues as of the filing of this Motion.

41.     As a result of the SV Default, Astoria accelerated the amounts due under the SV Note, which sum includes all unpaid principal, interest, late charges and the prepayment premium, which sum equals, as of June 2, 2010, $1,239,422.42, as detailed below:

| | |
|---|---|
| *Principal* | $1,200,000.00 |
| *Interest* | $10,850.00 |
| *Late Charges* | $4,461.42 |
| *Prepayment premium* | $24,111.00 |
| *Total* | $1,239,422.42 |

42.     As additional security for the SV Note, as part of the SV Mortgage, Sol Vista assigned to Astoria an interest in the rents owed by various tenants who lease (and are currently

leasing) the SV Property ("**SV Rents**"; collectively, with the BC Rents, the 133 West Rents and the 304 Rents, the "**Rents**"). In addition, by separate agreement dated September 18, 2007, formally entitled Assignment of Rents and Interests in All Leases as Collateral Security (the "**SV Assignment of Rents**"), a copy of which is attached hereto as <u>Exhibit V</u> and made an integral part hereof, Sol Vista assigned to Astoria all of its right, title and interest in all rents and other monies derived from the SV Property and irrevocably appointed Astoria its agent with all powers pertaining to the leases of the SV Property. The SV Assignment of Rents was recorded on October 23, 2007 in Control Number 472900492.

43. On information and belief, Sol Vista continues to collect and use SV Rents for its operations. Such use of SV Rents is without the consent of Astoria.

### ALL DEBTORS

44. Debtors' sole owner and principal, Alan Suridis, is separately obligated upon the Notes by virtue of a guaranty dated September 1, 2009 (the "**Guaranty**") whereby Mr. Suridis absolutely, irrevocably and unconditionally guaranteed payment in full of all amounts owed Astoria pursuant to the Notes. A copy of the Guaranty is attached hereto as <u>Exhibit W</u> and is made an integral part hereof.

45. For each Debtor, the Properties and Rents constitute Debtors' sole substantial asset. *See Schedules A and B* for each Debtor.[2] The NY County Receiver Order and the Westchester County Receiver Orders empower the receivers appointed thereunder to collect the Rents generated from the Properties. However, since the Petition Date, the receivers have not sought to enforce the receiver orders pursuant to 11 U.S.C. § 362(a).

46. The mortgage modifications in each case contain a cross-default provision such that a default under one mortgage is a default under all mortgages. *See* <u>Exhibits E, J, O and U</u>; *see also Suridis Affidavit*, ¶¶ 5 and 6.

---

[2] The only exception appears to be 304 West, which states in *Schedule B* it is owed approximately $2.4M for "Legacy inter-company Loans to Insiders and Non-Debtor Affiliates since 1996 for accounting purposes."

47. According to Debtors' *Schedule A*, the aggregate value of the Properties is worth less than what Astoria is owed:

| Debtor | Debt | Property value |
|---|---|---|
| Beaver Creek | $1,765,476.87 | $2,000,000.00 |
| 133 West | $2,992,757.54 | $2,500,000.00 |
| 304 West | $2,919,110.14 | $2,600,000.00 |
| Sol Vista | $1,239,422.42 | $1,000,000.00 |
| **Total** | **$8,916,631.97** | **$8,100,000.00** |

48. On information and belief, Debtor has no employees and is entirely operated by Mr. Suridis. *See Suridis Affidavit*, ¶ 1; *Schedule E* for each Debtor (listing no wage obligations); *Statement of Financial Affairs* # 3 for each Debtor (showing no transfers to any employees in the 90 days before the Petition Date); October Monthly Operating Reports for each Debtor (showing no payments made on "payroll" line).[3]

49. Debtor's unsecured obligations are small in relation to its obligations to Astoria. *Compare Suridis Affidavit*, ¶ 9 with ¶ 10; *see Schedule F* for each Debtor (showing unsecured debt of approximately $54,000 owed by Beaver Creek, approximately $26,000 owed by 133 West, approximately $58,000 owed by 304 West and $115,000 owed by Sol Vista).

50. Debtor's cashflow is insufficient to sustain its obligations to Astoria and taxing authorities. *Suridis Affidavit*, ¶¶ 7-8; *Schedule E* for each Debtor.

## REQUESTED RELIEF AND BASIS THEREFOR

## DISMISSAL OF CASE OR TERMINATION OF THE AUTOMATIC STAY

51. A bankruptcy court may, in its discretion, dismiss a case or terminate the automatic stay for "cause." 11 U.S.C. §§ 362(d)(1) and 1112(a). Cause may include, under both sections, the bad faith filing of a petition. *In re Eatman*, 182 B.R. 386, 392 (S.D.N.Y. 1995). The test for bad faith is the same under both § 362(d)(1) and § 1112(a). *Id.* In other words, a

---

[3] Property management duties appear to be conducted by entity named as Paramount Real Estate & Management in the 133 West and 304 West SOFAs. Apparently, Paramount is an entity wholly controlled by Suridis and through which Suridis pays himself for management of the properties.

lack of good faith in filing of a petition may be sufficient cause to dismiss a case, or, alternatively, sufficient cause to provide a creditor relief from the automatic stay. *Id.*; *see Manhattan King David Rest. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993) *citing In re Sonnax Indus.*, 907 F.2d 1280, 1286-87 (2d Cir. 1990); *In re Century/ML Cable Venture*, 294 B.R. 9, 34 (Bankr. S.D.N.Y. 2003) *citing CT-C 9th Ave. P'ship. v. Norton Co. (In re CT-C 9th Ave. P'ship.)*, 113 F.3d 1304, 1310 (2d Cir. 1997)(cause for dismissal may be found based upon factors not explicitly listed in § 1112(b), such as bad faith).

52.     Bad faith includes an objective and subjective element: the objective element consists of a "fundamentally unfair **result**" and the subjective element consists of a "fundamentally unfair **purpose** that was not in line with the spirit of the Bankruptcy Code." *In re Eatman*, 182 B.R. at 392 (emphasis added; internal quotations omitted) *citing In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992).

53.     A fundamentally unfair result would flow from a bankruptcy case in which there is no reasonable probability of debtor's reorganization. *CT-C 9th Ave.*, 113 F.3d at 1310. Assuming Debtors' rosy valuations are accurate, the Properties are worth over $800,000 less than what Astoria is owed, which makes Astoria not only Debtors' only secured creditor, but also their biggest unsecured creditor.   Due to the cross-default provisions, the fate of the Properties are intertwined. *See Suridis Affidavit*, ¶ 6.  In these circumstances, Astoria will almost certainly oppose any plan proposed by the Debtor, and cramdown will be futile. *See CT-C 9th Ave.*, 113 F.3d at 1309-10.  Without Astoria's consent, a plan in compliance with § 1129 will be impossible.  Debtors' Properties would remain subject to the Mortgages and Debtor would have no value to distribute to the unsecured creditors, including the large unsecured portion of Debtors' debt to Astoria. The absolute priority rule would prevent Mr. Suridis from retaining any equity in the Debtors; thus, reorganization would be futile and would manifest an unfair result.

54.     To determine whether a chapter 11 case is fundamentally unfair in purpose, the Second Circuit has stated that bankruptcy courts may find the following eight (8) factors pertinent:

a.  the debtor has only one asset;

b.  the debtor has few unsecured creditors whose claims are small in relation to the secured creditors;

c.  the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

d.  the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending foreclosure action;

e.  the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

f.  the debtor has little or no cashflow;

g.  the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

h.  the debtor has no employees (collectively, the "**CT-C Factors**").

*CT-C 9th Ave.*, 113 F.3d at 1311, *citing Pleasant Pointe Apts., Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 828 (W.D. Ky. 1992).  A bankruptcy court may, when presented with sufficient evidence of the CT-C Factors on the record before it, determine a debtor's bankruptcy filing to be in bad faith and dismiss it without a formal evidentiary hearing.  *CT-C 9th Ave.*, 113 F.3d at 1312.

55.     In *CT-C 9th Avenue*, the court upheld the decision of the bankruptcy court, which found that the debtor's sole asset was its real property, there were few unsecured creditors with small claims in comparison to the debt owed to debtor's secured lender, the real property was the subject of an ongoing foreclosure action due to a default under the secured lender's mortgage,

the financial issues were primarily a two party dispute between the debtor and its secured lender, the timing of the petition filing evidenced an intent to frustrate the secured lender's legitimate foreclosure efforts, the debtor was behind in its obligations to taxing authorities, the debtor had no employees and the case had been filed for over a year without substantial case activity. *Id.* Similarly, the court in *Pleasant Pointe Apartments* found the existence of seven of the eight factors indicated that the petition had been filed in bad faith. 139 B.R. at 832-33.

56.     In addition to bad faith, § 1112(b) provides an "illustrative, not exhaustive" list of ten (10) factors that may, in the discretion of the bankruptcy court, form a basis for dismissing a bankruptcy case for cause. *CT-C 9th Ave.* 113 F.3d at 1311. One of the ten factors includes "unauthorized use of cash collateral substantially harmful to 1 or more creditors." 11 U.S.C. § 1112(b)(4)(D).

57.     In this case, sufficient factors exist for the court to find that the Debtor filed the petition in bad faith such that it would be appropriate for the Court to dismiss the case or, alternatively, provide Astoria with relief from the automatic stay.

    a.  The Debtors have been using the Rents without authorization.[4]

    b.  The Debtors each have only one asset, the Properties. The Debtors' other assets, listed on their respective *Schedule B*s, are directly connected to the Properties, and loans to one another. The Rents are not property of the estate due to the Assignment of Rents and the appointment of a receiver in the Foreclosure Actions. *641 Ave. of the Ams. Ltd. P'ship. v. 641 Ave. of the Ams., Ltd.*, 189 B.R. 583, 590 (Bankr. S.D.N.Y. 1995); *see fn. 4, supra*. At best, the Rents are

---

[4] Astoria does not concede that the Rents are property of Debtors in which Astoria merely holds a security interest. Rather, after taking affirmative action through the Foreclosure Actions to obtain possession of the Rents, the Rents became the property of Astoria. *641 Ave. of the Ams. Ltd. P'ship. v. 641 Ave. of the Ams., Ltd.*, 189 B.R. 583, 590 (Bankr. S.D.N.Y. 1995)("an assignment of rents becomes enforceable when the assignee takes affirmative steps to assert his rights, such as appointing a receiver to collect the rents, taking possession of the property, commencing foreclosure proceedings, or seeking an order for sequestration of rents"). It is Astoria's position that Debtors' conversion of Rents would constitute cause for dismissal as if the Rents were cash collateral used without authorization under § 1112(b)(4)(D).

Astoria's cash collateral, currently being used without authorization and without adequate protection.

c. The Debtors shows only a few unsecured creditors on *Schedule F*, owed in the aggregate approximately $253,000. In comparison to Astoria's aggregate claim of over $8,900,000.00, Debtors' unsecured debts are a small fraction of Debtors' outstanding debts. Moreover, Astoria's aggregate claim against Debtors is under-secured by over $800,000.

d. The Properties and Rents are the subject of the pending Foreclosure Actions and, but for the automatic stay, would be subject to the control of the court-appointed receivers.

e. Debtors' financial condition is, in essence, a two party dispute between Debtors and Astoria, which is the cardinal cause for the Foreclosure Actions. *See Suridis Affidavit*, ¶ 8. The deterioration of the Debtors' financial condition, whether the result of pressure to reduce rent, a declining occupancy rate, or unaffordable capital improvements (*see Suridis Affidavit*, ¶ 12) and whether the collection of Rents is best left to Debtors or a receiver, is a matter best left to resolution in the Foreclosure Actions.

f. Debtors' filing coincided with the appointment of receivers in the Foreclosure Actions to collect the Rents and manage the Properties for the benefit of Astoria. Rather than allow the Foreclosure Actions to proceed in receivership toward their natural conclusion, Debtor has used their bankruptcy petitions to stall Astoria's legitimate efforts to realize value.

g. The Debtor has, by its own admission, insufficient cashflow to operate its business and remain current on its obligations to Astoria and the taxing authorities. *Suridis Affidavit*, ¶ 8.

h.  Finally, Debtor has no employees, as evidenced by the lack of any wage obligations noted in each Debtor's *Schedule E* and the lack of any transfers to employees in response to question 3 in each Debtor's *SOFA*.

58.  Due to the existence of these factors, the Court should determine that cause exists to dismiss the case (whether due to the unauthorized use of the Rents or Debtors' bad faith) pursuant to § 1112(b); or, alternatively, find that cause exists to terminate the automatic stay pursuant to § 362(d) so that Astoria may proceed with the Foreclosure Actions and receiverships.

59.  In addition to § 1112(b), the Court may also dismiss this case pursuant to § 305(a), which provides an independent basis for dismissal of a bankruptcy case if the interests of the debtor and creditors would be better served by such dismissal.  Where a bankruptcy case arises out of a "classic two party dispute, involving solely state law issues that are currently pending" before a state court, dismissal pursuant to § 305(a).  *In re Silver Spring Center*, 177 B.R. 759, 760 (Bankr. D.R.I. 1995).  Additionally, when the debtor's purpose in filing the bankruptcy case is to stop a foreclosure action previously instituted in state court, a petition may be dismissed on such basis alone.  *In re Concord Storage & Warehouse Co.*, 40 B.R. 831, 834 (Bankr. S.D. Ohio 1984).  The relevant inquiry is whether dismissal would be in the best interest of the debtor and its creditors; economy of administration is the primary consideration for making such a determination.  *In re O'Neil Village Personal Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa. 1988).  Thus, where the bankruptcy court cannot accomplish any more than what is or can be accomplished in state court, dismissal is the appropriate outcome.  *Id*.

60.  In the event the Court decides not to dismiss the case, the Court should provide Astoria relief from the automatic stay.  As discussed above, the Court may terminate the stay for "cause," such as Debtors' bad faith filing.  In addition to "cause," § 362(d)(2) provides that the stay may be terminated as to property of the estate if (1) the debtor lacks equity in the property and (2) the property is not necessary for a successful reorganization.  Here, the Debtors' own

schedules reflect a lack of equity in the Properties.  Furthermore, as described above, there is no hope that Debtors will be able to successfully reorganize.  As a result, both factors under subsection (d)(2) are met, and the Court may terminate the stay to allow the Foreclosure Actions and receiverships to proceed.

61.    In this case, dismissal would be the most efficient outcome.  First, Astoria has already implemented the state law mechanism for resolution of all issues surrounding the Properties.  Needless duplication of administrative costs (e.g. professional fees) for Debtors and Astoria, can be avoided by dismissal in favor of the Foreclosure Actions. Unnecessary administrative expenses harm all creditors.  *See In re Williamsburg Suites, LTD*, 117 B.R. 216, 220 (Bankr. E.D. Va. 1990).  At a minimum, § 362(d)(1) and (2) provide sufficient grounds for termination of the stay so that the Foreclosure Actions and receiverships may proceed.

## CONCLUSION

For the foregoing reasons, Astoria Federal Savings & Loan Association respectfully requests that the Court dismiss this bankruptcy case or terminate the automatic stay with respect to the Properties so that Astoria may conclude the Foreclosure Actions.

Dated: December 15, 2010

**THOMPSON HINE, LLP**

/s/ Barry M. Kazan
      Barry M. Kazan
*Attorneys for Creditor,*
*Astoria Federal Savings & Loan Assoc.*
335 Madison Ave.
New York, NY 10017
(212) 908-3921
barry.kazan@thompsonhine.com